UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY LANZILOTTI; | * |
| MITCHELL COSSABOON | * |
| and | * |
| NATIONAL FEDERATION OF THE BLIND, on behalf of its members and itself, | * Civil Action No.:  CV 15-3656 (JEI)(JS) |
| | * |
| Plaintiffs, | |
| | * |
| v. | |
| | * |
| ATLANTIC CAPE COMMUNITY COLLEGE, | |
| | * |
| Defendant. | |
| | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## CONSENT DECREE

### I.   JURISDICTION AND VENUE

1.   The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12188(b). Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

### II.   BACKGROUND

2.   Plaintiffs, Anthony Lanzilotti, Mitchell Cossaboon, and the National Federation of the Blind ("NFB"), have alleged that Atlantic Cape Community College ("ACCC") has engaged in discriminatory treatment prohibited by Title II of the ADA and Section 504 of the Rehabilitation Act, which allegations ACCC categorically denies. The parties have engaged in extensive negotiations resulting in resolution of such claims that are memorialized in the instant Consent Decree. On June 1, 2015, Plaintiffs filed a Complaint against Atlantic Cape Community College for the purpose of affording jurisdiction to the Court to review and adopt the negotiated

terms and conditions of this Consent Decree.

3. ACCC is a comprehensive two-year nonprofit publicly-supported educational institution with several campuses in New Jersey that awards associate's degrees and offers continuing education. ACCC is governed by a Board of Trustees pursuant to New Jersey statutory authority. ACCC is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131, and 28 C.F.R. § 35.104, and is therefore subject to Title II of the ADA and its implementing regulations, 28 C.F.R. Part 35. ACCC is also a "recipient" of "federal financial assistance" within the meaning of Section 504, 29 U.S.C. § 794, and 34 C.F.R. § 104 and is therefore subject to Section 504 and the relevant implementing regulations, 34 C.F.R. Part 104.

4. ACCC denies the allegations against it and claims that it acted at all times in compliance with the ADA and Rehabilitation Act and asserts that its entry into this Consent Decree does not constitute an admission of liability, wrongdoing or violation of the ADA, Rehabilitation Act, or any other statute, regulation, or provision of any federal or state law.

5. This Consent Degree is entered into by the Plaintiffs and ACCC and it resolves the allegations set forth above.

6. The Plaintiffs and ACCC agree that it is in all parties' best interest to resolve this lawsuit on mutually agreeable terms without further litigation. Accordingly, the parties agree to the entry of this Consent Decree, subject to the approval of this Court, without trial or further adjudication of any issues of fact or law raised in the Plaintiffs' Complaint.

In resolution of this action, the parties hereby **AGREE** and the Court expressly **APPROVES, ENTERS, AND ORDERS** the following:

### III. DEFINITIONS

7. "Accessible" means fully and equally accessible to, and independently usable by,

blind individuals, so that blind students and faculty members are able to acquire the same information, engage in the same interactions, and enjoy the same services as sighted students and faculty with substantially equivalent ease of use.

8. "Information Technology" means any equipment or interconnected system or subsystem of equipment, that is used in the automatic acquisition, storage, manipulation, management, movement, control, display, switching, interchange, transmission, or reception of data or information. The term Information Technology includes computers, ancillary equipment, software, firmware and similar procedures, services (including support services), and related resources.

9. "Electronic and Information Technology" or "EIT" includes information technology and also any equipment or interconnected system or subsystem of equipment that is used in the creation, conversion, or duplication of data or information. The term Electronic and Information Technology includes, but is not limited to, telecommunications products (such as telephones), information kiosks, internet and intranet websites, electronic books and electronic book reading systems, search engines and databases, course management systems, instructional technology and multimedia, and office equipment such as classroom podiums, copiers and fax machines.

10. "Instructors" means all individuals who provide any course-related instruction to ACCC students, including, but not limited to, professors, instructors, other faculty, and teaching assistants.

## IV.   ACTIONS TO BE UNDERTAKEN BY ACCC

### Adoption and Dissemination of Policies

11. Within 120 days of the effective date of this Decree, ACCC shall hire a third-

party consultant to evaluate the Disability Support Services office and assist in the creation of the policies and procedures referred to herein from a list mutually agreed upon by the Parties, attached hereto as Exhibit A. The third party consultant will:

  a. Be knowledgeable concerning
      i. The general requirements of the ADA, Section 504, and their applicable regulations;
      ii. Accessibility and usability of web content;
      iii. Accessible document development and remediation;
      iv. Accessibility and usability of equipment;
      v. Testing and evaluating the accessibility of web and other technologies;
      vi. This Decree;
      vii. WCAG 2.0, ATAG 2.0, UAAG 1.0, WAI-ARIA, Math ML, WCAG2ICT, DAISY and ePub3;
      viii. The appropriate provision of auxiliary aids and services for students with disabilities in non-electronic or non-digital formats, such as Braille hard copy, tactile graphics, large print hardcopy, sign language interpretation; and
      ix. Reasonable modifications to policies, practices and procedures in higher education to achieve equal access for students with disabilities;
  b. Evaluate the provision of services by ACCC's Office of Disability Support Services;
  c. Assist ACCC in the development of policies and initiatives required by this Decree;

    d. Report and document quarterly to ACCC's Vice-President for Information Technology whether:

        i. ACCC's websites conform to WCAG 2.0 AA and this Decree;

        ii. Third party websites on which ACCC places content or uses for web services conform to WCAG 2.0 AA and this Decree, or how equally effective alternate access is provided, if appropriate, under this Decree;

        iii. Learning Management Software and other technologies used by ACCC conform to WCAG 2.0 AA and this Decree, or how equally effective alternate access is provided, if appropriate, under this Decree;

        iv. ACCC has received any complaints or grievances concerning the use of inaccessible technologies; and

        v. The requirements of this Decree have been met, and, if not, what requirements have not been met and why.

12. Within 240 days of the effective date of this Decree, ACCC shall revise its existing policies or adopt and implement policies that:

    a. Ensure no qualified individual with a disability shall be, by reason of such disability, excluded from participation in or be denied the benefits of the services, programs, or activities of ACCC, or be subjected to discrimination by ACCC. Such policy shall specifically refer to the requirement of deploying Accessible technology and course content in a post-secondary setting, as more specifically outlined in Paragraphs 21 through 27 of this Decree.

    b. Ensure that ACCC's Office of Disability Support Services acts as a liaison between students and faculty. To this end the policy shall require the Office of Disability

Support Services to take an active role in working with all persons within ACCC, including but not limited to all persons involved in providing class instruction to students, to promptly and effectively resolve involved in providing class instruction to students.

  c. Ensure that ACCC's Office of Disability Support Services serves as the main point of contact on issues related to ADA compliance for all persons involved in providing class instruction at ACCC. If a student makes a disability-related complaint to a person involved in providing class instruction, that person must notify the Office of Disability Support Services immediately so that the Office of Disability Support Services can ensure appropriate resolution of the complaint and, where appropriate, be involved in facilitating such resolution.

  d. Ensure that ACCC-recognized modifications for students (those granted to individual students through "Accommodations Letters") are timely implemented under the supervision of ACCC's Office of Disability Support Services. The decision to request accommodations from an instructor shall remain solely the decision of individual students.

  e. Ensure that ACCC's Office of Disability Support Services timely responds to reasonable requests for assistance by students with disabilities, when such requests were not anticipated, and therefore perhaps not enumerated, in ACCC-prepared "Accommodations Letters."

  f. Ensure that, consistent with the requirements of the ADA, opportunities afforded generally to ACCC students are equally afforded to students with disabilities. For instance, when ACCC allows students in a course to take exams outside of the operating hours of ACCC administrative offices, ACCC shall ensure that students with

6

disabilities are afforded that same opportunity.

g. Ensure that ACCC's "Grievance Policy" applicable to disability-related issues is triggered any time the Office of Disability Support Services has not fully resolved a student's complaint. In such an instance, the Office of Disability Support Services shall self-report to the appropriate ACCC official within two (2) business days of the failure to resolve the student's complaint. No written complaint by the affected student to either ACCC's Office of Disability Support Services or the "appropriate ACCC official" shall be required in such instance. However, the resolution of any such complaint shall be documented by a statement signed by the student that the complaint was resolved and describing the manner in which it was resolved. ACCC's Grievance Policy on disability-related issues shall be provided in an Accessible format to all students with disabilities at orientation, be posted in Accessible format on ACCC's website and described on all forms used to record the grievance and the student's assent, when appropriate, of the resolution of the grievance.

h. Ensure that ACCC's Americans with Disabilities Policy includes the correct contact information for filing complaints with the Department of Justice Civil Rights Division (via mail, email, and via telephone/TTY), as reflected at http://www.ada.gov/fact_on_complaint.htm.

i. Ensure that ACCC commits to implementing accessibility of EIT as defined above for blind and other visually impaired students in accordance with the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

j. Ensure that electronic technology purchased or licensed for, or deployed to students or prospective students is Accessible to those who are blind or visually

impaired, unless its acquisition results in undue financial and administrative burdens or a fundamental alteration in a program, service or offering. ACCC shall advise vendors of its desire to procure web-based EIT that complies with the WCAG 2.0 AA standards. ACCC will request vendors to warrant in writing that any technology provided is Accessible as described in this Decree.

13. The policies revised or adopted pursuant to the preceding paragraphs shall be shall be made part of ACCC's "Manual of Policies and Procedures," and included in the next version of its "Manual of Policies and Procedures." Within 270 days of the effective date of this Decree, ACCC shall post the new policies on its website.

14. Within 270 days of the effective date of this Decree, ACCC shall disseminate the policies referred to in Paragraph 12 to all Instructors and all ACCC administrators. Such dissemination shall occur via electronic mail to each covered individual.

## Training

15. ACCC shall develop a training program that shall begin with a live training session in the Fall of 2015 for all of its employees that addresses the requirements of the ADA, this Decree, available resources and grievance procedures. ("ADA Training"). Beginning with the Spring 2016 semester and thereafter on a regular basis on a frequency determined by ACCC with advice and guidance from expert consultant(s) for the term of this Decree, ACCC shall provide ADA Training to all Instructors and all ACCC executives, administrators and support staff. This training may be provided in live or online sessions. ACCC will solicit comments from NFB with respect to the development of its ADA Training program, but, as between the Parties, ACCC will make the final decision with regard to implementation.

16. The scope of the ADA Training shall vary according to an employee's

responsibilities as follows:

    a. In all instances, the ADA Training must address the requirements of Title II of the ADA; the existence of this Decree and how employees may access a copy; ACCC's resources for students and Instructors on disability-related matters (including, but not limited to, the identity and functions of the ACCC's Office of Disability Support Services and the functions and identity of ACCC's designee for coordinating ACCC's response to disability-related grievances; ACCC's student accommodation process and procedures including Instructors' obligations to provide all accommodations recognized by ACCC via "Accommodations Letters" given to students registered with ACCC's Office of Disability Support Services; and Title II "best practices" to ensure ACCC's compliance with the ADA.

    b. Other classes of employees, as determined by ACCC in consultation with its expert consultants, shall be trained concerning:

        i. Common assistive technologies and other auxiliary aids and services used by individuals with disabilities in interacting with computers, websites, equipment, and in learning in and outside of the classroom, including non-electronic formats;

        ii. Common technological accessibility barriers encountered by individuals with disabilities, including those found on websites, in various document formats, and equipment and devices used in laboratories and classrooms;

        iii. Common methods, resources, personnel and time frames used in

      ensuring that word processing, spreadsheet and presentation documents, converted and digital textbooks, informational images, multimedia, and course equipment and devices are Accessible;

   iv. The means by which one creates and provides Accessible instructional materials in the classroom setting or by delivery electronically through course websites or email;

   v. An overview of accepted accessibility standards;

   vi. Consideration of selecting course texts that have accessible electronic formats, such as DAISY or ePub3; and

   vii. Reporting obligations under Paragraph 28 of this Decree.

17. For persons who must receive ADA Training pursuant to this Decree, but who did not receive training on a designated training date required under this Decree (for instance, because they were on leave from ACCC, because they began their affiliation with ACCC subsequent to the training date or because they assumed a position within ACCC subjecting them to coverage under this paragraph subsequent to the training date), ACCC shall provide the ADA Training to such persons within sixty (60) days after the individual's commencement of service to ACCC in a position covered by this paragraph or within sixty (60) days of their return to ACCC (for instance, from leave).

18. ACCC has already initiated training, and it shall continue to develop and produce an acceptable curriculum for the training, which shall be conducted live for the Fall 2015 semester and shall be made final, subject to revisions and modification that may be required under the law, for use beginning with the Spring 2016 semester. NFB will share lists of resources relating to the training curriculum, which ACCC will consider before making its final

decision as to the contents of the training curriculum. ACCC will make available on ACCC's website the name(s), qualifications and contact information of the individual(s) who will conduct the training, no later than 180 days after the effective date of this Decree. ACCC will adopt training protocols that include maintenance of documentation establishing the identity of employees attending each session of ADA Instructor/Administrator Training conducted.

19.  During all orientation sessions offered during the term of this Decree to incoming students (including first-year and transfer students), ACCC shall include a mandatory presentation by a member of ACCC's Office of Disability Support Services, either as a stand-alone module or as part of other orientation on the resources available to students ("ADA Student Training").

20.  The ADA Student Training shall include, but not be limited to, the functions of ACCC's ADA Coordinator and the ACCC's Office of Disability Support Services, the process for obtaining an ACCC-issued "Accommodations Letter," and the "Grievance Policy and process pertaining to disability-related issues. During the ADA Student Training, ACCC shall distribute written information (in an Accessible format where appropriate) on the functions of ACCC's ADA Coordinator and ACCC's Office of Disability Support Services (including the process for obtaining an initial or a renewal ACCC-issued "Accommodations Letter"). ACCC, with the assistance of its consultant(s), will determine what other matters will be included in ADA Student Training. ACCC shall produce a curriculum for the ADA Student Training required under this Decree. ACCC will accept recommendations from NFB in producing curriculum for the ADA Student Training, but ACCC will make the final decision with regard to such curriculum.

### Technology Audit

21. ACCC shall conduct and complete within one year after signing the Decree a Technology Accessibility Audit of all student-facing Electronic and Information Technology, including, but not limited to ACCC's enterprise-wide student facing systems and the public atlantic.edu web site. The Technology Accessibility Audit will be conducted in a professional manner using appropriate methods to examine the accessibility of the identified EIT. ACCC agrees to accept and consider a list of recommendations from the NFB with regard to the Technology Accessibility Audit. For the purposes of this Decree, conformance with the following standards, where applicable, shall constitute Accessibility:

   a. WCAG 2.0 AA and WAI-ARIA 1.0 for web content;

   b. ATAG 2.0 for software used to create web content;

   c. UAAG 1.0 for web browsers, media players and assistive technologies;

   d. WCAG2ICT for non-web software and content;

   e. MathML 3.0 specifications for digital mathematical and scientific notation;

   f. DAISY or ePub3 for digital publications and documents;

   g. BANA Guidelines and Standards for Tactile Graphics (2010) and Guidelines for the Production of Braille Materials through the Use of Braille Production Software (2007) for hardcopy Braille.

22. Within 180 days after the completion of the Technology Accessibility Audit, ACCC shall develop a Corrective Action Strategy based on the Technology Accessibility Audit findings that will make all inaccessible EIT Accessible no later than 3 years after the completion of the Technology Accessibility Audit, except that for students with print disabilities currently enrolled at ACCC or enrolled for any semester prior to completion of the Corrective Action

Strategy, ACCC will timely provide Accessible EIT or equally effective alternate access for every class in which such a student is enrolled. No later than sixty days after the Strategy is finalized ACCC shall disseminate the Strategy and post it on the Atlantic.edu web site. ACCC shall hire or designate an individual or entity to oversee the implementation of the Strategy. The Corrective Action Strategy shall provide, in those instances in which no Accessible EIT is commercially available and to refrain from the use of EIT would be an undue burden on ACCC or a fundamental alteration of its program, that ACCC shall develop with the assistance of the person designated to oversee the Strategy how, no later than 3 years after completion of the Audit, ACCC shall provide disabled students with equally effective alternate access.

### Instructional materials

23. All instructional materials, co-curricular materials, EIT, and online courses created or used by an ACCC department or professor in connection with any ACCC course offering must be Accessible to individuals with disabilities at the same time they are available to any other student enrolled in that program. For example, all content presented visually in a classroom, test, or homework setting for a class that includes a student with a visual disability must be made Accessible in a nonvisual format in time to be used by that student in those same settings, including, for nontextual information, tactile graphics or high resolution magnification, as appropriate. ACCC shall develop a plan for making Accessible instructional materials, co-curricular materials, EIT, and online courses created or used by an ACCC Department or professor in connection with any ACCC course offering accessible to individuals with disabilities at the time they are made available to any other student enrolled in that program. To assist in fulfilling the requirements of this paragraph, ACCC shall hire a third party consultant or utilize a third party consultant already being retained in conjunction with other sections of this Consent

Decree who has expertise in creating Accessible content. All instructional materials, co-curricular materials, EIT, and online courses created or used by an ACCC Department or professor in connection with any ACCC course offering will be made accessible no later than three years from the execution of this Consent Decree subject to the third party consultant's determination that accessibility within this time frame is reasonable and possible. ACCC agrees to implement accessibility earlier than the three-year time frame in the event the third party consultant concludes that such materials may reasonably be made accessible in a period shorter than three years from the execution of the Consent Decree. This plan shall be posted on the Department, program, unit, or professor's website and updated as implementation proceeds. For students with print disabilities currently enrolled at ACCC or enrolled for any semester prior to completing implementation of the plan, ACCC shall timely provide such materials in accessible format for every class in which such a student is enrolled.

24. ACCC shall timely make available print textbooks in the alternate Accessible format requested by a blind student, including Braille or an electronic format satisfying the ePub3 standard, together with tactile graphics or high resolution magnification, as appropriate, for nontextual information. The process for requesting an alternate format for a textbook shall include an Accessible form that can be independently completed by a blind student. ACCC shall continue to recommend students register early if they need accessible books, but ACCC will not condition the provision of accessible information upon such early registration. Before providing an electronic textbook to a student, ACCC shall verify that it is Accessible.

25. Tactile graphics must comply with the Braille Authority of North America's "Guidelines and Standards for Tactile Graphics" and be proofed by a qualified proofreader.

26. ACCC's integrated library system website shall be Accessible to blind and

visually impaired patrons in accordance with WCAG 2.0 Level AA standards. ACCC shall conduct an accessibility scan annually of content on the ACCC library website generated by ACCC and shall notify content authors if their pages fail to meet the WCAG 2.0 Level AA standards. All such actions shall be completed within three years of the signing of this Decree. ACCC is not responsible for the inaccessibility of third-party databases, but shall, upon request, provide timely equally effective alternate access to the content requested.

### Websites

27. ACCC's public website (atlantic.edu) and ACCC's web interface to the student information system (WebAdvisor), as well as any online forms, shall be made Accessible to blind and visually impaired users in accordance with WCAG 2.0 Level AA standards within 240 days of the effective date of the Decree. All pages hosted on these sites that have been published or updated on or after January 1, 2012 shall be Accessible to blind and visually impaired users. Any other pages shall be made Accessible upon request within 10 days of the request. ACCC shall develop a process to periodically monitor and remediate any barriers on any subsequently added pages or content, provide a prominent link on the website to an Accessible form for reporting any barriers, and do user testing for accessibility barriers of any major revisions of the site to ensure compliance prior to implementation of the revision.

### Reporting

28. Beginning 13 months after the date of this Decree, ACCC will make available to NFB annually a summary of the progress being made with regard to obligations set forth in this Decree.

### Relief to Mr. Lanzilotti and Mr. Cossaboon

29. Within ten (10) days of the effective date of this Decree, ACCC shall purge from Mr. Lanzilotti's transcript any reference to the courses CRIM 107 MD01, CRIM 165 MD01, and CRIM 170 MD01 in which he received an F grade during fall semester 2013, and ESCI-100 ME02 and MATH-122 MD03 in which he received an F grade during spring semester 2014, and CRIM 130 MD01 and any other course in which he received a W grade during fall semester 2014. ACCC shall waive fees and tuition for the courses necessary for the completion of Mr. Lanzilotti's criminal justice degree. Within 30 days of the effective date of this Decree, ACCC shall pay Mr. Lanzilotti $3600, in full satisfaction of all claims for monetary relief alleged by him in the Complaint, with no admission of wrongdoing by ACCC. The parties agree that Mr. Lanzilotti remains a member of ACCC's LEAD student enrichment and leadership program.

30. Within 30 days of the effective date of this Decree, ACCC shall pay Mr. Cossaboon $500, in full satisfaction of all claims for monetary relief alleged by him in the Complaint, with no admission of wrongdoing by ACCC.

### Access to Campus

31. ACCC shall not condition Mr. Lanzilotti's or Mr. Cossaboon's access, or that of any other blind person, to any portion of its campuses on a requirement that the blind person be accompanied by a sighted aide.

### Attorneys' Fees

32. Within 30 days of the effective date of this Decree, ACCC shall pay Brown, Goldstein & Levy LLP the sum of $128,620 in full satisfaction of all claims for attorneys fees and expenses incurred by plaintiffs in this matter, with no admission of wrongdoing by ACCC.

### Enforcement and Term

A.  If it appears to ACCC that a deadline contained in this Decree will prove difficult to meet either because of unforeseen circumstances or with the support or recommendation of the third-party consultant, ACCC shall notify NFB that it wishes to modify the Decree and the Parties, fully taking into account the requirements of the ADA and the needs of students with disabilities, shall attempt to determine whether to seek a modification from this Court.

B.  If the Plaintiffs believe that this Consent Decree or any portion of it has been violated, they shall give notice (including reasonable particulars) of such violation to ACCC. ACCC must respond to such notice as soon as practicable but no later than fifteen (15) days thereafter. The Plaintiffs and ACCC shall negotiate in good faith in an attempt to resolve any dispute relating to the alleged violation; if the parties are unable to reach a mutually acceptable resolution, the Plaintiffs may seek court enforcement of compliance with this Decree. Nothing in this Decree, however, shall prevent the Plaintiffs from filing a separate lawsuit against ACCC for any violations or potential violations of the ADA or any other federal or state law, other than the violations alleged in the Plaintiffs' Complaint in the above-titled action, and other than all claims, demands, obligations, damages, including punitive damages, liabilities, causes of action and rights, in law or in equity, known and unknown, that Plaintiffs may have against the Defendant, its officers, agents, representatives and employees (present and former), and its respective successors and assigns, heirs, executors and personal or legal representatives, based upon any act, event or omission relating to Accessibility issues occurring before the execution of this Consent Decree including, but not limited to, any events related to, arising from, or in connection with Plaintiff's' interactions with ACCC. This Consent Decree shall become effective as of the date of the Court's entry of it and shall remain in effect for five (5) years from that date.

C.  This Consent Decree does not purport to remedy any violations or potential

violations of the ADA or any other federal or state law, other than the violations alleged in the Plaintiffs' Complaint in the above-titled action.

    D.    Failure by Plaintiffs to seek enforcement of this Decree pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to other instances or provisions.

**Additional Terms:**

    A.    Plaintiffs understand and agree that an IRS Form 1099 designating the settlement amount identified in this Consent Decree as "other income" may be issued. Plaintiffs agree to assume full liability for applicable state, federal and local taxes that Plaintiff may be required by law to be paid with respect to any settlement payment described herein. Plaintiffs further agree that in the event that the Internal Revenue Service or any other taxing authority deems any tax, interest, penalties or other amounts to be due from the ACCC as a result of Plaintiffs' responsibilities/duties to any taxing authority with respect to the settlement amounts in this Consent Decree, Plaintiff s will indemnify the ACCC for any sums ACCC may be required to pay.

    B.    The Parties agree that they shall not disparage each other whether to any current or former employee of ACCC, the press, general public, media, or any other business entity or third party. The parties also agree not to authorize any person to make any disparaging statements about the other or to defame them to any person, entity or third party.

    C.    All notices and reports that ACCC is required to send to counsel for the Plaintiffs under this Consent Decree, shall be sent by e-mail, to counsel for the Plaintiffs, Daniel F. Goldstein, Esq. at dfg@browngold.com.

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound, have caused this Decree to be executed as of the dates set forth below.

**SO ORDERED** this 7th day of July 2015.

_____
United States District Judge for the
District of New Jersey